IN THE COURT OF APPEALS
TWELFTH DISTRICT OF TEXAS
TYLER, TEXAS

No. 12-14-00292-CR



FILED IN COURT OF APPEALS
12th Court of Appeals District
DEC 19 2014
TYLER TEXAS
CATHY S. LUSK, CLERK

In re JUAN ENRIQUEZ, Relator

Original Proceeding from Anderson County, Texas
87th Judicial District Court, No. 87-9821
Honorable Deborah A. Oakes Evans, Judge Presiding

RELATOR'S SUPPLEMENT TO
ORIGINAL PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE JUDGES OF SAID COURT:

Juan Enriquez, Relator, files his Relator's Supplement
to Original Petition for Writ of Mandamus, showing as follows:

I.

Relator's Petition for Writ of Mandamus was filed on
October 14, 2014. However, the Clerk informed Relator that the
petition for mandamus fails to comply with the requirements of
Texas R. App. P. 52.3(k)(1)(C) and Tex. R. App. P. 52.7. Each
of these deficiencies is addressed separately:

Rule 52.3(k)(1)(C)

Rule 52.3(k)(1)(C) requires inclusion "unless voluminous
or impracticable, the text of any rule, regulation, ordinance,

... or other law (excluding case law) on which the argument is based."

The basis of Relator's claim is the decision of the United States Supreme Court in Furman v. Georgia 408 U.S. 238 (1972), as interpreted by the Attorney General of Texas in Attorney General Opinion No. M-1187 issued on August 1, 1972, in response to inquiry by the Board of Pardons and Paroles of Texas regarding the status of prisoners under sentence of death when Furman was rendered. A sworn copy of Attorney General Opinion No. M-1187 is provided with this Supplement.

Relator also relies on Article 42.09, §8((b), of the Texas Code of Criminal Procedure, which provides that the Texas Department of Criminal Justice "shall not take a defendant into custody under this article until the designated officer receives the documents required by subsections (a) and (c) of this section." A sworn copy of this article is provided with this supplement.

## Rule 52.7

Rule 52.7 requires Relator must file a certified or sworn copy of every document that is material to the relator's claim that was filed in any underlying proceeding and a properly authenticated transcript of any relevant testimony from any underlying proceeding ... or a statement that no testimony was adduced in connection with the matter complained ...." Here, the district clerk of Anderson County has not replied to Relator's

requests to purchase the record of the underlying cause.
However, Relator attached to his Original Petition a sworn
copy of the petition for writ of habeas corpus which he
seeks heard and decided. Jhus, Relator has complied with
Rule 52.7(a)(1) and there is no need for Rule 52.7(a)(2) because
no testimony was adduced in connection with the matter complained
of in thus natter,

                              Respectfully submitted,

                              Juan En riquez
                              227122
                              TDCJ-Michael
                              2664 FM 2054
                              Jeanessee Colony, JX 75886

                    Verification

    I, Juan Enriquez, declare under penalty of perjury,
that the foregoing statements in my Supplement to Original
Petition for Writ of Mandamus are true and correct. Executed
on December 20, 2014.

                              Juan Enriquez
                    Certificate of Service

    I, Juan Enriquez, certify that a correc t kcopy of the
foregoinbg Supplement to Original Petition for Writ of Mandamus
was served by placing same in the United States mail, postage
prepaid, on December 20, 2014, addressed to: Mr. Douglas E.
Lowe, District Attorney Courthouse, 500 North Church St.,
Palestine, TX 75801 and Judge Deborah Oakes Evans, 87th District
Court, Courthouse Suite 30, 500 N. Church Street, Palestine,
TX 75801.

                              Juan Enriquez

## Authentication

I, Juan Enriquez, declare under penalty of perjury that the attached Attorney General Opinion No. M-1187 is a correct copy of the opinion provided to me by the Office of the Attorney General of Texas. Executed on December 20, 2014.

_____
Juan Enriquez



# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 1, 1972

Hon. Clyde Whiteside
Chairman
Board of Pardons and Paroles            Opinion No. M-1187
Room 501 John H. Reagan Bldg.
Austin, Texas  78701                     Re: Effect of Furman v.
                                              Georgia holding death
                                              penalty unconstitutional,
Dear Sirs:                                    and related questions.

    This is in response to your recent inquiry concerning application of the recent U. S. Supreme Court decisions in Furman v. Georgia (69-5003), Jackson v. Georgia (69-5030) and Branch v. Texas (69-5031) ___ U.S. ___, 40 L.W. 4923, to procedures before the Texas Board of Pardons and Paroles. We quote your entire letter (less formal parts):

> "The Texas Board of Pardons and Paroles respectfully requests your opinion concerning matters of commutation of sentence, as provided in Article 4, Section 11 of the Texas Constitution and other Texas laws. In view of the recent United States Supreme court opinions concerning the death penalty in William Henry Furman vs. State of Georgia, et. al., and being cases numbers 69-5003, 69-5030 and 69-5031.

> "It is the established policy of the Texas Board of Pardons and Paroles when considering commutation of sentences from death to life imprisonment that the sentencing trial court officials instigate application for such commutation by written request to the Board setting out its reason for seeking such commutation and requesting the Board to make such recommendation to the Governor for his action. This Board does not solicit commutation application nor has it to my knowledge ever initiated commutation without the request of the trial officials or the convicted defendant. This is the established procedure followed by this and prior Boards in such cases. In view of the ruling of

the Supreme Court in the Furman case, and other cases numbered above, we would like to have a legal opinion upon the following questions:

"1.  Did the ruling in Furman vs. Georgia, #69-5003, 69-5030, and 69-3031 et. al., declare the death penalty unconstitutional, per se?

"2.  What is the present posture of death penalties assessed in Texas District Courts in the following catagories:

(a)  Awaiting motion for new trial in Texas District Courts.

(b)  Awaiting appeal to Texas Court of Criminal Appeals.

(c)  Affirmed by the Texas Court of Criminal Appeals and awaiting certiorari to the Supreme Court of the United States.

(d)  Penalties provided declared unconstitutional by the Supreme Court of the United States.

(e)  Habeas Corpus proceedings pending under Article 11.07 Texas Code of Criminal Procedure.

(f)  Habeas Corpus pending in various federal courts.

"3.  In view of the Board's policy outlined above, may this Board now act with regard to the above catagories of cases to recommend commutation to the Governor?

"4.  In the event of commutation of the death penalty to life imprisonment, does this Board have any responsibility for causing the individual to be re-sentenced?

"5.  What effect upon the action of this Board will result when a condemned person informs the Board in writing that he does not wish to receive commutation from death to life?"

I.

The decision of the U. S. Supreme Court in the three cited cases (combined) is a short per curiam decision which, with formal parts omitted, holds:

"Certiorari was granted limited to the following question: 'Does the imposition and carrying out of the death penalty in [these cases] constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments?' 403 U.S. 952 (1971). The Court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The judgment in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings." (Emphasis added).

Then there follow nine opinions (five separate concurrences and four joint and separate dissents).

We must point out the fact that at the time of the issuance of this opinion the mandate of the United States Supreme Court has not been issued and petitions for rehearing have been filed in all three of the cases (as well as all other Texas death penalty cases acted upon by that Court). We do not predict what the action of the Court upon these motions will be. We can only provide you with our current understanding of these decisions. The following discussion must be accepted in this light.

After careful study of the order and the nine opinions, we conclude that the death penalty, per se, has not been declared constitutionally impermissible. The entire thrust of the combined cases is to declare Texas (and other) procedures are violative of "procedural due process" only as to the imposition of death as a punishment for crime in the manner and under the circumstances submitted.

In our opinion, these decisions make all current Texas death sentences subject to successful attack in proper proceedings in appropriate courts and prohibits the assessment of death in current cases under present Texas statutes.

II.

You have advised this office that your inquiry with regard to "posture" includes not only presently but also with regard to posture in the event the death penalty should be commuted to life imprisonment.

In Attorney General's Opinion M-981 (1971), this office advised that your board "generally can recommend and the Governor, based on such recommendation, can commute a death sentence to life imprisonment even though the conviction is on appeal and has not been finally determined by the Texas Courts. The Board and Governor may do the same even though the United States Supreme Court may reverse a judgment insofar as it imposes the death penalty and remands the case to the Texas Court for further proceedings in conformity with its judgment, so long as the Texas Court has taken no final action in the case."

We further advised you that your board "can recommend to the Governor that a death sentence be commuted to life imprisonment, and the Governor, pursuant to such recommendation, can commute the sentence without consent of the convict. Neither do we find in our laws any requirement that the Board of Pardons and Paroles conduct a hearing before it recommends commutation nor before commutation is given."

This conclusion is supported by the recent decision of the Court of Criminal Appeals in the case of Whan v. Texas, ___ S.W. 2d ___ (not yet reported but being Cause No. 41,789 on the docket of that court) delivered June 28, 1972. That opinion holds that the Governor may commute a death sentence to life even after the U. S. Supreme Court has declared the death penalty invalid or at any time after a verdict of guilty has been returned and the jury has fixed the penalty (but of course before a new trial has been granted by a court of competent authority). The opinion also noted that commutation does not affect the judgment but merely mitigates the punishment.

With such introductory statements, we will now analyze the categories submitted.

(a)

Where a death penalty conviction is pending motion for new trial in the District Court, the penalty may be commuted and the motion for new trial will be heard and disposed of on the merits asserted as if life imprisonment had been the original penalty imposed.

(b)

Where appellate review is pending in the Court of Criminal Appeals, the penalty may be commuted and the appeal may proceed.

We express no opinion on whether or not the Court of Criminal Appeals might return the cause to the District Court for further proceedings (such as sentencing, supplementary briefs, etc.) or treat death penalty questions as surplusage, etc., as that Court has not yet had an opportunity to act to provide guidelines in such matters and the Code of Criminal Procedure appears not to contemplate such a possibility.

(c)

Where certiorari is pending, the penalty may be commuted, thereby rendering death penalty questions moot (although other issues would remain unchanged).

(d)

Where the U. S. Supreme Court has granted death penalty relief and remanded the cause to the Court of Criminal Appeals (but where the Court of Criminal Appeals has not yet acted to grant a new trial), the penalty may be commuted and the Court of Criminal Appeals will re-affirm its judgment (this is the precise posture found in Whan v. State, supra).

(e)

Where habeas corpus proceedings are pending in Texas courts under Article 11.07, Texas Code of Criminal Procedure, commutation may be granted, thereby rendering moot any death penalty questions.

(f)

Where Federal habeas corpus proceedings are pending, commutation may be granted and it would then be incumbent upon counsel for the State to call this to the attention of the Federal Court for its consideration upon the issue of mootness.

It is our opinion that in all of the above categories, absent commutation, the court concerned must either grant a new trial (or in habeas corpus, order the release of the prisoner if a new trial is not granted).

III.

In view of the decision in Whan v. State, supra, it is our

opinion that the Board of Pardons and Paroles may now act with regard to recommending commutations in all cases in all categories. And since we find no prohibition to prevent the Board from acting sua sponte, we certainly find no prohibition against the Board requiring some initiative from either the State or the condemned person before consideration will be given to a recommendation. It is obviously within the inherent rule making power of the Board to establish orderly procedures for the disposition of matters within its jurisdiction.

## IV.

We find no statutory burden upon the Board to concern itself with the sentencing or resentencing of persons commuted. This would be a matter entirely for the judiciary.

## V.

In regard to the effect of notice from the condemned man that he opposes commutation, we quote again (as in A. G. Opinion #M-981) from the Court of Criminal Appeals decision in Ex Parte LeFors, 303 S.W.2d 394 (Tex.Crim. 1957) at p. 397:

> "Commutation of sentence means the change of the punishment assessed to a less severe one. It differs from a pardon in that it may be imposed without consent of the convict or against his will." (Emphasis added.)

Since the people of Texas have an interest in conserving judicial time and the immense cost of retrials, counsel for the State may properly petition for commutation to avoid such wasteful duplicity. It is our opinion that such a request from a condemned man should be considered by the Board along with all other factors but such request in no way prevents the Board from exercising its lawful discretion in making or withholding a recommendation to the Governor.

This question was disposed in Biddle v. Perovich, 274 U.S. 480 (U.S.S.Ct., 1927), wherein Mr. Justice Holmes stated for a unanimous court:

> "Both sides agree that the act of the President was properly styled a commutation of sentence, but the counsel of Perovich

urge that when the attempt is to commute a
punishment to one of a different sort it
cannot be done without the convict's consent."
* * *

"We will not go into history, but we will
say a word about the principles of pardons in
the law of the United States. A pardon in our
days is not a private act of grace from an
individual happening to possess power. It is
a part of the Constitutional scheme. When
granted it is the determination of the ulti-
mate authority that the public welfare will
be better served by inflicting less than what
the judgment fixed." * * *

"When we come to the commutation of death
to imprisonment for life it is hard to see
how consent has any more to do with it than it
has in the cases first put. Supposing that
Perovich did not accept the change, he could
not have got himself hanged against the Execu-
tive order. Supposing that he did accept, he
could not affect the judgment to be carried
out. The considerations that led to the
modification had nothing to do with his will.
The only question is whether the substituted
punishment was authorized by law--. . ." * * *

"We cannot doubt that the power extends
to this case. By common understanding impris-
onment for life is a less penalty than death.
It is treated so in the statute under which
Perovich was tried." * * *

### SUMMARY

1. The U. S. Supreme Court has not held the death
penalty unconstitutional, per se, but has declared Texas
procedure in the assessment of death unconstitutional.

2. Present death penalties at any stage between
jury verdict and granting of a new trial may be commuted
to life.

3. The Board of Pardons and Paroles may now act to

recommend commutation upon application from officials of the convicting court.

4. The Board has no obligation to go forward in causing convicting courts to re-sentence (under <u>nunc pro tunc</u>) those commuted.

5. The Board may recommend (and the Governor may grant) commutation over a protest from the condemned person.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Howard M. Fender
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Max P. Flusche
Lang A. Baker
Robert L. Lattimore
Gordon Cass

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant

Authentication

I, Juan Enriquez, declare under penalty of perjury that the attached Article 42.09 of the Code of Criminal Procedure is a correct copy of said Article 42.09. Executed on December 20, 2014.

_____
Juan Enriquez

Art. 42.09. COMMENCEMENT OF SENTENCE; STATUS DURING APPEAL; PEN PACKET.

Sec. 1. Except as provided in Sections 2 and 3, a defendant shall be delivered to a jail or to the Texas Department of Criminal Justice when his sentence is pronounced, or his sentence to death is announced, by the court. The defendant's sentence begins to run on the day it is pronounced, but with all credits, if any, allowed by Article 42.03.

Sec. 2. If a defendant appeals his conviction and is released on bail pending disposition of his appeal, when his conviction is affirmed, the clerk of the trial court, on receipt of the mandate from the appellate court, shall issue a commitment against the defendant. The officer executing the commitment shall endorse thereon the date he takes the defendant into custody and the defendant's sentence begins to run from the date endorsed on the commitment. The Texas Department of Criminal Justice shall admit the defendant named in the commitment on the basis of the commitment.

Sec. 3. If a defendant is convicted of a felony and sentenced to death, life, or a term of more than ten years in the Texas Department of Criminal Justice and he gives notice of appeal, he shall be transferred to the department on a commitment pending a mandate from the court of appeals or the Court of Criminal Appeals.

Sec. 4. If a defendant is convicted of a felony, is eligible for release on bail pending appeal under Article 44.04(b), and gives notice of appeal, he shall be transferred to the Texas Department of Criminal Justice on a commitment pending a mandate from the Court of Appeals or the Court of Criminal Appeals upon request in open court or upon written request to the sentencing court. Upon a valid transfer to the department under this section, the defendant may not thereafter be released on bail pending his appeal.

Sec. 5. If a defendant is transferred to the Texas Department of Criminal Justice pending appeal under Section 3 or 4, his sentence shall be computed as if no appeal had been taken if the appeal is affirmed.

Sec. 6. All defendants who have been transferred to the Texas Department of Criminal Justice pending the appeal of their convictions under this article shall be under the control and authority of the department for all purposes as if no appeal were pending.

Sec. 7. If a defendant is sentenced to a term of imprisonment in the Texas Department of Criminal Justice but is not transferred to the department under Section 3 or 4, the court, before the date on which it would lose jurisdiction under Section 6(a),

Art. 42.09. COMMENCEMENT OF SENTENCE; STATUS DURING APPEAL; PEN PACKET.

Sec. 1. Except as provided in Sections 2 and 3, a defendant shall be delivered to a jail or to the Texas Department of Criminal Justice when his sentence is pronounced, or his sentence to death is announced, by the court. The defendant's sentence begins to run on the day it is pronounced, but with all credits, if any, allowed by Article 42.03.

Sec. 2. If a defendant appeals his conviction and is released on bail pending disposition of his appeal, when his conviction is affirmed, the clerk of the trial court, on receipt of the mandate from the appellate court, shall issue a commitment against the defendant. The officer executing the commitment shall endorse thereon the date he takes the defendant into custody and the defendant's sentence begins to run from the date endorsed on the commitment. The Texas Department of Criminal Justice shall admit the defendant named in the commitment on the basis of the commitment.

Sec. 3. If a defendant is convicted of a felony and sentenced to death, life, or a term of more than ten years in the Texas Department of Criminal Justice and he gives notice of appeal, he shall be transferred to the department on a commitment pending a mandate from the court of appeals or the Court of Criminal Appeals.

Sec. 4. If a defendant is convicted of a felony, is eligible for release on bail pending appeal under Article 44.04(b), and gives notice of appeal, he shall be transferred to the Texas Department of Criminal Justice on a commitment pending a mandate from the Court of Appeals or the Court of Criminal Appeals upon request in open court or upon written request to the sentencing court. Upon a valid transfer to the department under this section, the defendant may not thereafter be released on bail pending his appeal.

Sec. 5. If a defendant is transferred to the Texas Department of Criminal Justice pending appeal under Section 3 or 4, his sentence shall be computed as if no appeal had been taken if the appeal is affirmed.

Sec. 6. All defendants who have been transferred to the Texas Department of Criminal Justice pending the appeal of their convictions under this article shall be under the control and authority of the department for all purposes as if no appeal were pending.

Sec. 7. If a defendant is sentenced to a term of imprisonment in the Texas Department of Criminal Justice but is not transferred to the department under Section 3 or 4, the court, before the date on which it would lose jurisdiction under Section 6(a),

Acts 2005, 79th Leg., Ch. 728, Sec. 4.005, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1308, Sec. 4, eff. June 15, 2007.

Acts 2009, 81st Leg., R.S., Ch. 87, Sec. 25.023, eff. September 1, 2009.

Acts 2009, 81st Leg., R.S., Ch. 87, Sec. 25.024, eff. September 1, 2009.

Acts 2009, 81st Leg., R.S., Ch. 980, Sec. 1, eff. September 1, 2009.

Acts 2005, 79th Leg., Ch. 728, Sec. 4.005, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1308, Sec. 4, eff. June 15, 2007.

Acts 2009, 81st Leg., R.S., Ch. 87, Sec. 25.023, eff. September 1, 2009.

Acts 2009, 81st Leg., R.S., Ch. 87, Sec. 25.024, eff. September 1, 2009.

Acts 2009, 81st Leg., R.S., Ch. 980, Sec. 1, eff. September 1, 2009.